766 So.2d 672 (2000)
Benny Lee CROCKER, et al., Plaintiffs-Respondents,
v.
Rodney Lane ROACH, et al., Defendants/Applicants/Respondents.
No. 33,507-CW.
Court of Appeal of Louisiana, Second Circuit.
August 23, 2000.
Writ Denied November 17, 2000.
*673 Klotz, Simmons & Reeks by F. John Reeks, Jr., Shreveport, Counsel for Applicant Lincoln Insurance Co.
Pugh, Pugh & Pugh, L.L.P. by Robert G. Pugh, Shreveport, Counsel for Respondents Rodney Lane Roach, Becky Roach and Double R Arena Inc.
Herman L. Lawson, Mansfield, Joey W. Hendrix, Counsel for Respondents Benny Lee Crocker and Nancy Sue Crocker.
Before WILLIAMS, GASKINS and CARAWAY, JJ.
GASKINS, J.
After their teenage son was injured in a bull riding competition, the plaintiffs sued the arena where the competition was held, its principals, and its insurer. The arena's insurer filed a motion for summary judgment, claiming that its policy contained an "athletic participants" exclusion which precluded coverage for the boy's injuries. The trial court denied the motion, and the insurer's subsequent writ application to this court was granted. For the reasons assigned below, we reverse the trial court judgment, grant summary judgment in favor of the insurer and make the writ peremptory.

FACTS
On April 15, 1995, 16-year-old Kristopher Lee Crocker participated in a bull *674 riding contest at the Double R Arena in Stonewall, Louisiana. He was thrown from and stomped by the bull. His injuries allegedly included broken ribs, punctured lungs, a lacerated liver, and the onset of diabetes.
On April 12, 1996, Kristopher's parents, Benny Lee and Nancy Sue Crocker, filed suit against Double R Arena, Inc.; its principals, Rodney Lane Roach and Becky Roach; and the arena's insurer, Lincoln Insurance Company. They asserted that Kristopher was allowed to participate in the bull riding event without his parents' permission and without inquiry as to his ability and experience.
Lincoln answered the petition, asserting that the sole cause of the boy's injuries was his own conduct; alternatively, they pled his comparative fault. Lincoln further claimed that its policy did not provide coverage for the incident.
In their answer, the Roaches and the arena asserted that Kristopher had participated in junior bull riding events on several occasions and had even won such a competition in March 1995, about a month before the accident. They also alleged that he was only allowed to participate with his parents' permission. Furthermore, they stated that they were not covered by "any type of insurance which would afford coverage relating to participants."
In August 1996, Lincoln filed its first motion for summary judgment. It asserted that its policy covering the arena included an endorsement that excluded coverage for bodily injury suffered by anyone while practicing for or participating in any contest or exhibition of an athletic or sports nature sponsored by the named insured. The operations described on the exclusion as being subject to the endorsement are "arena used for horse shows, rodeos, etc., rated as exhibitions. Outside in stadiums or on premises having grandstands or bleachers." Attached to the motion was a copy of the policy and the exclusion at issue.
The plaintiffs opposed the motion, contending that the exclusion was not delivered to the Roaches in the policy mailed to them for the year of the accident and that it was not included on the declarations page of the policy. Attached to the opposition was a copy of the policy delivered to the Roaches for the policy period of 5/21/94 to 5/21/95. The Roaches and the arena also opposed the motion for summary judgment, filing another copy of the policy and an affidavit by Mr. Roach verifying the policy authenticity.
On January 14, 1998, the trial court denied the motion with written reasons. The court noted that the athletic participants exclusion was labeled "GL 2101" and was effective May 21, 1991; it was noted on the declarations page for that year. However, subsequent policy renewal certificates did not list GL 2101 but did list additions or deletions of exclusions. The trial court stated that the question was whether the insurer could rely on its "boilerplate" language that "[a]ll other prior attachments are still applicable" or was the renewal certificate required to specifically reference each exclusion or endorsement for them to be effective. The court found the boilerplate language insufficient to give policyholders notice of which "provisions/exclusions/endorsements" applied to their policy. Finding that the mover had failed to show there was no genuine issue of material fact as to whether the insured had adequate notice of the athletic participants exclusion, summary judgment was denied. Judgment was signed on February 25, 1998.
In July 1999, Lincoln filed a second motion for summary judgment. Stating that it had conducted additional discovery since the last motion, Lincoln asserted that its insured was provided with both verbal and written notice of the athletic participants exclusion. In support of this contention, Lincoln submitted the affidavit of F. John Reeks, Jr., Lincoln's attorney, that pursuant to discovery he had copied all of the *675 insurance policies provided by counsel for the arena. Those documents were submitted in support of the motion, as were the affidavit and deposition of Joseph M. Murray, the Roaches' insurance agent. He stated that he sentby mail or by personal deliverycopies of all Lincoln policies, endorsements and renewal certificates at the time they were issued to the insured's address as shown on the policy; that the athletic participants exclusion was included when the Lincoln policy was issued to the arena; that he discussed it with Mr. Roach, who was made aware of its provisions; and that the policy was subsequently renewed by renewal certificates.
The other parties to the suit filed a joint opposition to the second motion, asserting that genuine issues of material fact and law still remained and that summary judgment was improper. The plaintiffs filed a motion to strike Mr. Murray's affidavit and deposition on the basis that he was not subject to cross-examination; as an additional ground, they contended these documents were inadmissible because they attempted to modify the insurance contract. However, no counter-affidavits were filed.
At a hearing on November 5, 1999, the trial court again denied the motion for summary judgment. The court noted that, while evidence might develop that the Roaches were aware of the exclusion, it believed that the renewal sheets alone were insufficient notice. Judgment in conformity with the court's ruling was signed on November 29, 1999.
Lincoln filed a writ application with this court; we granted the writ on February 17, 2000, and ordered the matter duly docketed.

LAW

Summary Judgment
Summary judgment procedure is designed to secure the just, speedy and inexpensive determination of every action, except those disallowed by law; the procedure is favored and must be construed to accomplish these ends. La. C.C.P. art. 966 A(2); Ebarb v. Guinn Brothers, Inc., 31,426 (La.App.2d Cir.1/20/99), 728 So.2d 487. After adequate discovery or after a case is set for trial, a motion which shows that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law shall be granted. La. C.C.P. art. 966 C(1); Ebarb, supra. The burden of proof remains with the mover. La. C.C.P. art. 966 C(2); Ebarb, supra.
If the moving party points out an absence of factual support for one or more elements essential to the adverse party's claim, action or defense, the nonmoving party must produce factual support sufficient to establish he will be able to satisfy his evidentiary burden at trial; failure to do so results in no genuine issue of material fact and the proper granting of summary judgment. Smith v. General Motors Corporation, 31,258 (La.App.2d Cir.12/9/98), 722 So.2d 348.
Appellate review of summary judgment is de novo, utilizing the same criteria that guide the trial court's grant of the judgment. Magnon v. Collins, 98-2822 (La.7/7/99), 739 So.2d 191.

Insurance
The interpretation of an insurance contract is usually a legal question which can be properly resolved by means of motion for summary judgment. State Farm Mutual Automobile Insurance Company v. Casualty Reciprocal Exchange, 600 So.2d 106 (La.App. 2d Cir. 1992). However, summary judgment declaring a lack of coverage under an insurance policy may not be rendered unless there is no reasonable interpretation of the policy, when applied to the undisputed material facts shown by the evidence supporting the motion, under which coverage could be afforded. Reynolds v. Select Properties, Ltd., 93-1480 (La.4/11/94), 634 So.2d 1180; Kelly v. Sneed, 27,171 (La. App.2d Cir.8/23/95), 660 So.2d 118, writ *676 denied, 95-2350 (La.12/8/95), 664 So.2d 426.
An insurance policy is an agreement between the parties and should be interpreted by using ordinary contract principles. Smith v. Matthews, 611 So.2d 1377 (La.1993). The parties' intent, as reflected by the words of the policy, determine the extent of coverage. Words and phrases used in a policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning. La. C.C. art. 2047; Reynolds v. Select Properties, Ltd., supra. Insurance companies have the right to limit coverage in any manner they desire, so long as the limitations do not conflict with statutory provisions or public policy. Reynolds v. Select Properties, Ltd., supra.
Exclusionary provisions in insurance contracts are strictly construed against the insurer, and any ambiguity is construed in favor of the insured. Ledbetter v. Concord General Corp., 95-0809 (La.1/6/96), 665 So.2d 1166, modified on other grounds, 95-0809 (La.4/18/96), 671 So.2d 915. The insurer has the burden of proving that a loss comes within a policy exclusion. Louisiana Maintenance Services, Inc. v. Certain Underwriters at Lloyd's of London, 616 So.2d 1250 (La. 1993).
La. R.S. 22:628, the so-called "Entire Contract Policy Statute," provides:
No agreement in conflict with, modifying, or extending the coverage of any contract of insurance shall be valid unless it is in writing and physically made a part of the policy or other written evidence of insurance, or it is incorporated in the policy or other written evidence of insurance by specific reference to another policy or written evidence of insurance. This Section shall not apply to contracts as provided in Part XV of this Chapter.
The provisions of this Section shall apply where a policy or other written evidence of insurance is coupled by specific reference with another policy or written evidence of insurance in existence as of the effective date hereof or issued thereafter.
Any written agreement in conflict with, modifying, or extending the coverage of any contract of insurance shall be deemed to be physically made a part of a policy or other written evidence of insurance, within the meaning of this section, whenever such written agreement makes reference to such policy or evidence of insurance and is sent to the holder of such policy or evidence of insurance by United States mail, postage prepaid, at such holder's last known address as shown on such policy or evidence of insurance or is personally delivered to such holder.
La. R.S. 22:635(A), pertaining to policy renewals, provides:
A. Any insurance policy terminating by its terms at a specified expiration date and not otherwise renewable may be renewed or extended at the option of the insurer and upon a currently authorized renewal form and at the premium rate then required therefor for a specific additional period or periods by a certificate or by endorsement of the policy, and without requiring the issuance of a new policy.
To be effective, a rider need not be physically attached to the policy through staples, glue, paper clips or the like. The intent of the statutory scheme requires only that to be effective the insured must be in possession at all times of the entire evidence of the insurance contract. Kanter v. Louisiana Farm Bureau Mutual Insurance Company, 587 So.2d 9 (La.App. 3d Cir.1991).

POLICY PROVISIONS
Lincoln first issued policy LGLA XXXXXXX-XX to the arena in 1988. Although it was not listed on the declarations page, attached to the policy was an athletic *677 participants exclusion (GL 2101) with an effective date of May 21, 1988, the same date the policy went into effect. In 1989, this exclusion was listed on the declarations page of the policy issued for that year.
In 1990, an insurance policy renewal certificate was issued to the arena. The certificate provided a place to list added or deleted endorsements; the language in this section stated: "Additional and/or Revised Endorsements/ Coverage Parts/ Forms are identified here by number." Immediately below is the statement: "All other prior attachments are still applicable." The certificate also stated in a black box in the middle of the page: "The insurance provided is subject to all terms and conditions of the Policy designated above to which this Renewal Certificate attaches, but at all times is subject to updated forms which are listed below and attached hereto." In 1990, no provisions were added or deleted.
In 1991, the arena was sent a whole policy, the declarations page of which listed GL 2101 among the applicable endorsements. The athletic participants exclusion was attached to the policy and gave an effective date of May 21, 1991, the same as the policy.[1] In 1992, the arena was sent a policy renewal certificate; no additions or deletions were made. The following year, 1993, another renewal certificate was sent to the arena. This time, four endorsements were deleted and three were added. (None of these endorsements were related to the athletic participants exclusion.)
In 1994, a renewal certificate was sent to the arena covering the policy period of May 21, 1994 to May 21, 1995. Since Kristopher Crocker's injuries allegedly occurred in April 1995, this is the policy term at issue in the instant matter. While three endorsements were added, another one was deleted. (Again, none of these endorsements were related to the athletic participants exclusion.) This renewal certificate, like all of the others, included the language: "All other prior attachments are still applicable."

DISCUSSION
Following a careful review of the evidence submitted in relation to Lincoln's motion for summary judgment, we find that the trial court erred in denying the motion.[2] The athletic participants exclusion was indisputably part of the 1991 policy issued to the arena. It was attached to that policy and sent to the insureds as required by La. R.S. 22:628. Thereafter, it was never removed or deleted, as adequately demonstrated by the renewal certificates. The renewal certificates clearly and unequivocally stated that "[a]ll other prior attachments are still applicable." Under the law, specifically La. R.S. 22:635, Lincoln was not required to reissue the entire policy each and every time it was renewed. It was sufficient that the renewal certificates designated the provisions which were added or deleted from coverage.
Put another way, the renewals of the arena's policy were not wholly new policies but were merely extensions of the original *678 contract. As such, La. R.S. 22:628 required that the renewal policies carry the same coveragewith the same exclusionsas the original unless a change was effected in the manner set forth in La. R.S. 22:628. The insurer effected no such change.
No counter-affidavits were filed by the opponents to the motion. Without evidence from the respondents that the athletic participants exclusion had affirmatively been eliminated in compliance with La. R.S. 22:628, summary judgment was appropriate in favor of Lincoln, which was entitled to rely upon that statute as defining the scope of its coverage of the arena's liability.

CONCLUSION
We make the writ granted in the instant case peremptory and reverse the trial court judgment. The motion for summary judgment filed by Lincoln Insurance Company is granted. Costs are assessed against the respondents.
WRIT MADE PEREMPTORY; REVERSED.
NOTES
[1] The provisions of the athletic participants exclusion read as follows:

It is agreed that with respect to operations described below or designated in the policy as subject to this endorsement, the insurance does not apply to bodily injury to any person while practicing for or participating in any contest or exhibition of an athletic or sports nature sponsored by the named insured.
In the 1988 endorsement, the "description of operations" is given as "arena," while in the 1991 endorsement it is described as "[a]rena used for horse shows, rodeos, etc., rated as exhibitions. Outside in stadiums or on premises having grandstands or bleachers."
[2] Counsel for the plaintiffs argues that the affidavits attached to Lincoln's motion should not be considered because parole evidence is inadmissible to modify or alter the terms of a written insurance policy. We consider the affidavits only to the extent that they establish that the policies were delivered to the arena and its principals, a fact which in no way varies the terms of the insurance contract.