792 So.2d 836 (2001)
Bruce NORWOOD and Madeline Norwood, Individually and on Behalf of Their Minor Child, Jamarius Norwood, Plaintiffs,
v.
Donna VAN VECKHOVEN, et al, Defendants.
No. 34,891-CA.
Court of Appeal of Louisiana, Second Circuit.
June 22, 2001.
*837 Cotton, Bolton, Hoychick & Doughty, L.L.P., by Terry A. Doughty, Rayville, Counsel for Defendants-Appellants, Louisiana Farm Bureau Casualty and Louisiana Farm Bureau Mutual Insurance Company.
Hudson, Potts & Bernstein, L.L.P., by Robert M. Baldwin, Monroe, Counsel for Defendant-Appellee Donna Van Veckhoven.
Before STEWART, GASKINS and DREW, JJ.
GASKINS, J.
The trial court granted a motion for summary judgment in favor of Donna Van Veckhoven against her insurer, Louisiana Farm Bureau Casualty Insurance Company. The court found that there was no genuine issue of material fact and that Mrs. Van Veckhoven's alleged tortious conduct toward Jamarius Norwood was covered by the insurance policy. The insurance company appeals, arguing that Mrs. Van Veckhoven's actions fall under the intentional conduct exclusion of the policy. For the following reasons, we reverse the trial court judgment and remand for further proceedings.

FACTS
On the afternoon of February 21, 1998, Jamarius Norwood was playing in a championship little league basketball game in Monroe, Louisiana. On the opposing team was Truman Van Veckhoven, son of Donna Van Veckhoven. In the first half of the game, Jamarius and Truman got into a struggle over a tie ball. There are allegations that Jamarius struck Truman. The two were separated. After the shedding of some tears, they were made to shake hands and the game proceeded. In the third quarter of the game, Truman fouled out. The game ended and Truman's team won by one point.
After the conclusion of the game, Donna Van Veckhoven left the stands and went over to Jamarius. She allegedly grabbed him by the arm, shook him, "repeatedly pointed her right index finger into his little chest," and said, "Don't you ever do that to my son again." Jamarius burst into tears. Jamarius' coach saw the incident and instructed Mrs. Van Veckhoven not to talk to her players. As Jamarius' mother and aunt hurried over, the defendant's husband directed Mrs. Van Veckhoven into the men's bathroom. Because of the disturbance, the trophy presentation following the game was cancelled.
On July 30, 1998, Jamarius' parents, Bruce and Madeline Norwood, filed suit against Mrs. Van Veckhoven and her insurers.[1] *838 The Norwoods claim that Jamarius had a nightmare about the incident, has headaches and is unable to sleep peacefully. There are no allegations that the child was physically injured; the damage complained of is in the nature of mental anguish. The plaintiffs sought to recover damages for mental anguish and distress, humiliation, embarrassment, medical expenses, loss of consortium, loss of enjoyment of life, and inconvenience.
Casualty and Mutual answered and asserted that any actions by Mrs. Van Veckhoven were intentional and excluded under the terms of the policies issued by the companies.
On May 17, 2000, Mrs. Van Veckhoven filed a motion for summary judgment asserting that Casualty issued a policy of insurance to her. She requested that the court render judgment that the Casualty insurance policy provided coverage in this matter.[2] The policy excludes coverage for injury, sickness, disease, death or destruction which is either expected or intended from the standpoint of the insured.
Mrs. Van Veckhoven filed a copy of the policy, Jamarius' deposition, and her deposition to support her assertions that there are no disputed issues of material fact that she did not intend or could not have reasonably expected the injury to occur. Mrs. Van Veckhoven asserted that the policy language is ambiguous and should be given a reasonable interpretation favoring coverage.
In opposition to the motion for summary judgment, Casualty filed numerous depositions by other witnesses in support of its argument that the alleged damages sustained by the plaintiffs were the result of an intentional act by Mrs. Van Veckhoven, precluding policy coverage. Under the terms of the policy, Casualty argues that there are serious factual disputes as to what occurred in this case and the matter was not appropriate for summary judgment.
On October 5, 2000, the trial court granted summary judgment in favor of Mrs. Van Veckhoven, ordering that Casualty provide insurance coverage to her in this matter. The court certified the grant of summary judgment as an appealable final judgment, as required by La. C.C.P. art. 1915(B).
On October 19, 2000, this court denied a writ application on behalf of Casualty. The company appealed devolutively, arguing that there are material issues as to whether the injuries allegedly received by Jamarius were expected or intended from the standpoint of Mrs. Van Veckhoven.

LEGAL PRINCIPLES

Summary Judgment
Summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by law; the procedure is favored and must be construed to accomplish those ends. La. C.C.P. art. 966 A(2); Crocker v. Roach, 33,507 (La. App.2d Cir. 8/23/00), 766 So.2d 672, writ denied, 2000-2684 (La.11/17/00), 774 So.2d 983. After adequate discovery or after a case is set for trial, a motion which shows that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law, shall be granted. La. C.C.P. art. 966C(1); Crocker *839 v. Roach, supra. The burden of proof is still with the mover. La. C.C.P. art. 966C(2).
Appellate review of summary judgment is de novo, utilizing the same criteria that guide the trial court's grant of the judgment. Magnon v. Collins, 98-2822 (La.7/7/99), 739 So.2d 191.

Insurance
An insurance policy is an agreement between the insured and the insurer and should be interpreted by using ordinary contract principles. The parties' intent, as reflected by the words of the policy, determines the extent of coverage. Words and phrases used in a policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning. La. C.C. art.2047; Crocker v. Roach, supra. Insurance companies have the right to limit coverage in any manner they desire, so long as the limitations do not conflict with statutory provisions or public policy. Reynolds v. Select Properties, Ltd., 93-1480 (La.4/11/94), 634 So.2d 1180.
Exclusionary provisions in insurance contracts are strictly construed against the insurer, and any ambiguity is construed in favor of the insured. The insurer has the burden of proving that a loss comes within a policy exclusion. Great American Insurance Company v. Gaspard, 608 So.2d 981 (La.1992); Crocker v. Roach, supra.

Intentional Injury Exclusion
The policy provision at issue here provides as follows:
This policy does not apply:
(c) under Coverages A, B, and C, to injury, sickness, disease, death or destruction which is either expected or intended from the standpoint of insured.
In Breland v. Schilling, 550 So.2d 609 (La.1989), the court rejected the reasoning that "intentional" as used in an insurance policy has the same meaning as "intentional" in tort law, workers' compensation or criminal law. The purpose of the intentional injury exclusion is to restrict liability insurance coverage by denying coverage to an insured in circumstances where the insured acts deliberately and intends or expects injury to another. Baugh v. Redmond, 565 So.2d 953 (La.App. 2d Cir. 1990).
An intentional act requires that the actor either (1) consciously desires the physical result of his act, whatever the likelihood of that result happening from his conduct, or (2) knows that the result is substantially certain to follow from his conduct, whatever his desire may be as to that result. Pique v. Saia, 450 So.2d 654 (La.1984); Great American Insurance Company v. Gaspard, supra. The exclusion is designed to prevent an insured from acting wrongfully with the security of knowing that his insurance company will "pay the piper" for the damages. Breland v. Schilling, supra; Great American Insurance Company v. Gaspard, supra.
The Louisiana Supreme Court first addressed the meaning of the phrase "expected or intended from the standpoint of the insured" in Pique v. Saia, supra. The limitation was found to be ambiguous and to only exclude from coverage injuries that were intentional. Great American Insurance Company v. Gaspard, supra. The term "from the standpoint of the insured" indicates that the subjective intent of the insured is the key and not what the average or ordinary reasonable person would expect or intend. The subjective intent of the insured, as well as his reasonable expectations as to the scope of his insurance coverage, will determine whether an act is *840 intentional. Great American Insurance Company v. Gaspard, supra.
Summary judgment is appropriate only if there is no factual dispute as to intent. Injury which is expected or intended emphasizes that an excluded injury is one which the insured intended, not one which the insured caused, however intentional the injury-producing act. Steed v. St. Paul's United Methodist Church, 31,521, 31,522 (La.App.2d Cir.2/24/99), 728 So.2d 931, writ denied, 99-0877 (La.5/7/99), 740 So.2d 1290. Not all injuries from an intended act will be excluded, only those injuries which were intended. The exclusion, however, requires a comparison of the nature of the injuries inflicted with the intentions and expectations of the defendant as shown by the defendant's expressions of intent and the surrounding facts. Hawthorn v. City of Bossier City, 29,621 (La.App.2d Cir.6/18/97), 697 So.2d 680.
In Breland v. Schilling, supra, the court made the following conclusion:
We hold, therefore, that when minor bodily injury is intended and such results, the injury is barred from coverage. When serious bodily injury is intended, and such results, the injury is also barred from coverage. When a severe injury of a given sort is intended, and a severe injury of any sort occurs, then coverage is also barred. But when minor injury is intended, and a substantially greater or more severe injury results, whether by chance, coincidence, accident or whatever, coverage for the more severe injury is not barred. Whether a given resulting bodily injury was intended "from the standpoint of the insured" within these parameters is a question of fact. Such factual determinations are the particular province of the trier of fact ...
The insured's subjective intent or expectation must be determined not only from the insured's words before, at the time of, or after the pertinent conduct, but from all facts and circumstances bearing on such intent or expectation. Great American Insurance Company v. Gaspard, supra.
Generally, whether the resulting injury was "intended from the standpoint of the insured" is a question of fact. Baugh v. Redmond, supra. A motion for summary judgment requiring a judicial determination of subjective facts, such as motive, intent, or knowledge, is rarely appropriate. Neuman v. Mauffray, 99-2297 (La.App. 1st Cir.11/8/00), 771 So.2d 283.
Cases in which summary judgment has been granted, finding that there is no insurance coverage for an intentional act and injury, are those in which there is no disputed issue of material fact as to the intent of the insured. See Holt v. Phipps, 98-1127 (La.App. 3d Cir.4/21/99), 733 So.2d 693, writ denied, 99-1504 (La.9/17/99), 747 So.2d 1108; Menard v. Zeno, 558 So.2d 744 (La.App. 3d Cir.1990), writ denied, 561 So.2d 121 (La.1990); Simpson v. Angel, 598 So.2d 584 (La.App. 4th Cir.1992), writ denied, 605 So.2d 1091 (La.1992); Hooper v. State Farm Mutual Automobile Insurance Company, 00-1509 (La.App. 5th Cir.1/23/01), 782 So.2d 1029. The jurisprudence holds that in child molestation cases, the act is intentional and the resulting physical and psychological harm are substantially certain to follow from the deliberate act. Therefore, the intentional act exclusion has been held to apply. See Doe v. Smith, 573 So.2d 238 (La.App. 1st Cir. 1990), writ denied, 573 So.2d 1139 (La. 1991). Similarly, intentionally shooting someone falls under the intentional act exclusion. See Hewitt v. Allstate Insurance Company, 98-0221 (La.App. 4th Cir.1/27/99), 726 So.2d 1120; Sperli v. Guiterrez, 00-1089, (La.App. 5th Cir.10/18/00), 772 So.2d 805.
*841 However, if there is a dispute as to whether the shooting was intentional or accidental, then summary judgment is not appropriate. See Young v. Brown, 27,018 (La.App.2d Cir.6/21/95), 658 So.2d 750, writ denied, 95-1811 (La.10/27/95), 662 So.2d 1. Striking someone may be an intentional act, but if the injury is more extreme than that intended, the exclusion does not apply. See and compare Breland v. Schilling, supra; Baugh v. Redmond, supra.

DISCUSSION
In most cases seeking a summary judgment under an intentional act exclusion, it is the insurer who argues that coverage does not exist due to an intentional act by its insured. By contrast, in the present case, it is the insured who seeks a pretrial determination that insurance coverage does exist because her act was not intentional. We further note that the insured is not seeking a decision of whether the insurer has a duty to defend her, but she seeks a definitive determination that she is covered for this incident.
In opposing the motion for summary judgment, Casualty contends that there are genuine issues of material fact bearing on Mrs. Van Veckhoven's intent. The company argues that the depositions attached in support of its opposition to the motion for summary judgment show that there is a dispute about what happened between the boys on the court as well as what Mrs. Van Veckhoven did when she approached Jamarius after the game. Some witnesses said that Jamarius struck Truman, others did not see any blows. There was also a dispute about exactly what Mrs. Van Veckhoven did and what her intent was. Some witnesses say she grabbed Jamarius by the arm, shook him and pointed her finger into his chest. Other witnesses said that she only pointed her finger in the boy's face, without touching him, and scolded him for striking Truman. Mrs. Van Veckhoven says she did not intend to injure the child and was not angry. She simply decided to instruct him not to strike other players. Some witnesses stated that Mrs. Van Veckhoven was indeed angry and headed for Jamarius as soon as the game was over.
The question to be addressed is whether Mrs. Van Veckhoven actually intended the injuries sustained by Jamarius Norwood. In resolving this issues, we must examine what injuries the child sustained. It is not alleged that he was physically injured. Immediately after the incident, Jamarius reported a nightmare. He was taken to Dr. Bobby L. Stephenson for visits in March 1998 and in May 1998. Dr. Stephenson stated that Jamarius experienced a considerable degree of distress and emotional upset connected with the incident and was anxious and worried that something like that might happen again. Dr. Stephenson concluded that Jamarius had experienced some trauma, but there was no extensive psychological damage to the child. He stated that with the right services, the damage should run its course in six months to 1 year.
Mrs. Van Veckhoven argues that the trial court was correct in granting her motion for summary judgment. She cites deposition testimony from Jamarius, stating that she grabbed his arm, shook him, pointed her finger at him and said "don't do that to her child anymore." She argues that the exclusion clause in the insurance policy is ambiguous and therefore should be given a reasonable interpretation which gives effect to the subjective intention of the insured and one which accords a reasonable person's expectation as to the scope of coverage. Mrs. Van Veckhoven claims that, accepting Jamarius' version of the incident, she did not intend to injure *842 him and did not expect that injury was substantially certain to follow from her conduct.
We find that a genuine issue of material fact does exist as to Mrs. Van Veckhoven's intent. There is deposition testimony showing that Mrs. Van Veckhoven seized Jamarius by the arm, shook him somewhat, pointed her finger at him and scolded him for what she perceived was an attack on Truman. In her deposition, Mrs. Van Veckhoven stated that she did not touch Jamarius, she only spoke to him after the game and told him to refrain from striking other players. This reflects that there is a disputed issue of fact as to the extent of Mrs. Van Veckhoven's contact with Jamarius. The depositions also reflect that Mrs. Van Veckhoven was angry at the time of the incident. She denies being angry when she approached the child. Therefore, there is a dispute as to Mrs. Van Veckhoven's state of mind during her encounter with Jamarius.
We neither find that Mrs. Van Veckhoven intended the alleged injury in this case nor do we affirm the trial court's ruling that Mrs. Van Veckhoven did not act intentionally. We merely find that, upon the record before us, there exists a genuine issue of material fact as to intent, precluding a grant of summary judgment. Resolution of this issue, under the circumstances presented here, will necessarily depend upon the facts adduced in the trial of this matter. At that point, a decision as to insurance coverage or the lack thereof may be more appropriately made.

CONCLUSION
For the reasons stated above, we reverse the trial court judgment which granted summary judgment in favor of Donna Van Veckhoven and against Louisiana Farm Bureau Casualty Insurance Company on the issue of insurance coverage. The matter is remanded to the trail court for further proceedings. Costs in this court are assessed to Donna Van Veckhoven.
REVERSED AND REMANDED.
NOTES
[1] Mr. and Mrs. Van Veckhoven have a farmer's comprehensive personal liability policy with Louisiana Farm Bureau Casualty Insurance Company (Casualty) and a homeowner's policy with Louisiana Farm Bureau Mutual Insurance Company (Mutual).
[2] The homeowner's policy with Mutual is not at issue in this case.