794 So.2d 86 (2001)
Jim Henry OXNER, et ux., Plaintiffs-Respondents,
v.
Leroy Alvin MONTGOMERY, et al., Defendants-Applicants.
Nos. 34,727-CW, 34,766-CW.
Court of Appeal of Louisiana, Second Circuit.
August 1, 2001.
*87 Sessions, Fishman & Nathan, by Glen E. Mercer, New Orleans, Counsel for Maryland Casualty Company.
*88 Barham & Warner by Richard G. Barham, Shreveport, Counsel for Ohio Casualty Insurance Company.
Rountree, Cox, Guin & Achee by Gordon E. Rountree, New Orleans, Counsel for Jim Henry Oxner & Deborah Cole Oxner.
Eskridge E. Smith, Jr., Linda S. Blackman, Bossier City, Counsel for Leroy Alvin Mongtomery & Janet Sojka Montgomery.
Before GASKINS, CARAWAY and PEATROSS, JJ.
GASKINS, J.
Maryland Casualty Company and Ohio Casualty Insurance Company applied to this court for supervisory review of a trial court ruling denying their motions for summary judgment on the issue of insurance coverage to the defendants, Leroy Alvin Montgomery and Janet Sojka Montgomery. This matter arises from the sale of an allegedly defective house to the plaintiffs, Jim Henry Oxner and Deborah Cole Oxner. Certiorari was granted by this court and the matter was docketed for decision. For the following reasons, we reverse.

FACTS
In late 1994 and early 1995, the Montgomerys built a house in Shreveport, Louisiana. They were the general contractors on the project and had commercial/comprehensive general liability (CGL) insurance with Maryland Casualty Company (Maryland) from June 20, 1994 until June 20, 1995, and with Ohio Casualty Insurance Company (Ohio) from June 14, 1995 and thereafter. After completion, the Montgomerys moved into the house and lived there until they sold it to the Oxners on February 24, 1997. Prior to the sale, the Oxners noted numerous items about the house that required repair, including more than 100 cracked tiles in the den, day room and kitchen. The Oxners contended that the Montgomerys agreed to repair these items. Following the sale, the Oxners noted numerous other problems including a cracked slab, cracks in the sheetrock walls, leaking windows, patio doors that did not fit, an unstable foundation, a cracked kitchen cabinet door and loose siding. The plaintiffs contended that these problems were covered by the New Home Warranty Act of La. R.S. 9:3141, et seq., and that the Montgomerys failed to remedy the problems after being given notice.
The Oxners filed suit against the Montgomerys on February 19, 1998, claiming that the old problems were not fixed and that the defendants failed to address the new problems. The Oxners contended that these problems were caused by an unstable foundation. They alleged that the Montgomerys failed to consult an engineer and failed to adequately test and stabilize the soil prior to pouring the slab. They sought to recover the cost of repairs, attorney fees and court costs, or in the alternative, rescission of the sale or a reduction in the price. Their petition was subsequently supplemented and amended to add Maryland and Ohio. They asserted that Maryland had in effect a policy of CGL insurance to Janet Montgomery d/b/a Montgomery and Associates during the construction of the house and Ohio issued a CGL insurance policy to the Montgomerys from June 14, 1995 and thereafter.
On August 7, 2000, Maryland filed a motion for summary and declaratory judgment, denying coverage. The company claimed that there was no "occurrence" as defined under the terms of the policy, no property damage during the policy period and, that if there was, because the Montgomerys lived in the house prior to selling it, the "premises alienated" exclusion bars coverage of the plaintiffs' claims.
*89 On September 21, 2000, Ohio filed a motion for summary judgment, noting that it provided a policy of CGL insurance to the defendants from June 14, 1995 and thereafter. The company asserts that there is also a "premises alienated" clause in their contract of insurance that excludes coverage of the plaintiffs' claims.
The Oxners filed an opposition to the motions for summary judgment. In support of their opposition, the plaintiffs submitted the report of an engineer stating that the house had foundation problems caused by its construction on highly plastic clay soil that was not stabilized. The plaintiffs asserted that a construction defect is an occurrence for purposes of insurance coverage. Because the faulty foundation was constructed during the period of Maryland's policy, the plaintiffs contend the policy provides coverage. They also asserted that there is a disputed issue of fact about when problems from the foundation began and therefore, summary judgment was not appropriate.
Regarding the "premises alienated" clauses, the plaintiffs contended that a grant of summary judgment in favor of the insurance companies is not appropriate. The Oxners urge that this conflict, at the least, renders the policy provisions ambiguous.
On November 7, 2000, the trial court filed a "judgment with reasons," denying the insurance companies' motions for summary judgment. The trial court discussed the "premises alienated" clause in both policies and found that there was no dispute that the Montgomerys occupied the house for more than one year and then sold it to the plaintiffs. However, the policies also contained "completed operations" clauses covering all bodily injury or property damage "occurring away from premises you own or rent and arising out of your product or your work." The court found the portions of the policy covering completed operations to be ambiguous, requiring the policy to be interpreted in a light favoring coverage.
The court addressed Maryland's argument that the definition of an occurrence did not include the liability of a contractor based upon improper construction or faulty repair work. The court opined that the Maryland policy contains a "work-product exclusion," but the exception provides that it does not apply to property damage included in the products-completed operations hazard provision. The court found that it would be dishonest to exclude coverage while collecting a separate premium for this coverage.
The court also found that whether there has been an "occurrence" under the terms of the policy is a factual issue not properly decided on a motion for summary judgment. The court further determined that, in addition to claims of improper construction or faulty repair work, the plaintiffs have asserted a claim in redhibition, that the cracked slab is the result of continuous or repeated exposure to conditions, and this claim is clearly defined as an "occurrence."
Maryland filed writ application No. 34,727-CW and Ohio filed No. 34,766-CW with this court. Because the trial court decision appears to be in conflict with several decisions of this court and because this court has not previously addressed the "premises alienated" exclusion, on January 25, 2001, the writ applications were granted and the matters docketed for decision. This court consolidated the applications on March 8, 2001.

LEGAL PRINCIPLES

Summary Judgment
Summary judgment procedure is designed to secure the just, speedy, and in-expensive *90 determination of every action, except those disallowed by law; the procedure is favored and must be construed to accomplish those ends. La. C.C.P. art. 966 A(2); Crocker v. Roach, 33,507 (La. App.2d Cir.8/23/00), 766 So.2d 672, writ denied, 2000-2684 (La.11/17/00), 774 So.2d 983. After adequate discovery or after a case is set for trial, a motion which shows that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law shall be granted. La. C.C.P. art. 966 C(1); Crocker v. Roach, supra. The burden of proof is still with the mover. La. C.C.P. art. 966 C(2).
If the moving party points out an absence of factual support for one or more elements essential to the adverse party's claim, action or defense, the nonmoving party must produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden at trial; failure to do so results in no genuine issue of material fact and the proper granting of summary judgment. Smith v. General Motors Corporation, 31,258 (La.App.2d Cir.12/9/98), 722 So.2d 348; Crocker v. Roach, supra.
Appellate review of summary judgment is de novo, utilizing the same criteria that guide the trial court's grant of the judgment. Magnon v. Collins, 98-2822 (La.7/7/99), 739 So.2d 191.

Comprehensive General Liability Policies
The scheme governing comprehensive general liability policies is set forth in McKenzie & Johnson, Insurance Law and Practice, § 183 at p. 362 in 15 La. Civil Law Treatise (2d Ed.1996):
It was introduced as a replacement for schedule liability policies which provided coverage for specific hazards under separate insuring agreements. The CGL policy provides coverage under a broad insuring agreement with certain specific risks excluded. Under the standard policy form, the CGL policy protects against the premises, operations, products, completed operations and independent contractors hazards, but coverage for a specific hazard may be excluded by endorsement. Likewise, additional coverages may be provided by endorsement.

Insurance
An insurance policy is an agreement between the insured and the insurer and should be interpreted by using ordinary contract principles. The parties' intent, as reflected by the words of the policy, determines the extent of coverage. Words and phrases used in a policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning. La. C.C. art.2047; Crocker v. Roach, supra. Insurance companies have the right to limit coverage in any manner they desire, so long as the limitations do not conflict with statutory provisions or public policy. Reynolds v. Select Properties, Ltd., 93-1480 (La.4/11/94), 634 So.2d 1180.
Any doubt or ambiguity in an insurance policy must be construed in favor of the insured and against the insurer, and when the ambiguity relates to an exclusionary clause, the law requires that the contract be interpreted liberally in favor of coverage. Korossy v. Sunrise Homes, Inc., 94-473 (La.App. 5th Cir.3/15/95), 653 So.2d 1215, writs denied, 95-1536, 95-1522 (La.9/29/95), 660 So.2d 878. The insurer has the burden of proving that a loss comes within a policy exclusion. Crocker v. Roach, supra.
The mere fact that an insurance policy is a complex instrument requiring *91 analysis to understand does not render it ambiguous. St. Paul Fire & Marine Insurance Company v. Valentine, 95-0649 (La.App. 1st Cir.11/9/95), 665 So.2d 43, writ denied, 95-2961 (La.2/9/96), 667 So.2d 534.
According to Maryland, the issues presented for decision are whether there was an "occurrence" as defined in Maryland's policy, whether the plaintiffs' damages occurred during the policy period of Maryland or that of Ohio, and whether the "premises alienated" clause is ambiguous. Ohio Casualty asserts only that the "premises alienated" exclusion should be applied as written to exclude the plaintiffs' claims against Ohio. The company asserts that the trial court ignored controlling precedent and erroneously found the "premises alienated" clause to be ambiguous in light of the products-completed operations hazard provision.

OCCURRENCE
According to Maryland, improper construction or faulty works claims do not meet the policy definition of an "occurrence." The Maryland policy provides as follows regarding coverage for an "occurrence":
Section I. Coverages
Coverage ABodily Injury and Property Damage Liability
1. Insuring Agreement
a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies ...
b. This insurance applies to "bodily injury" and "property damage" only if:
(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory" and
(2) the "bodily injury" or "property damage" occurs during the policy period.
The policy defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful condition." Maryland cites Lewis v. Easley, 614 So.2d 780 (La.App. 2d Cir. 1993), in support of its argument that faulty or defective workmanship does not meet the policy definition of an "occurrence."
In Lewis v. Easley, supra, this court considered the applicability of a CGL policy to the plaintiffs' claim for damages arising from defective roof repairs. We found that the policy contained a work-product exclusion and therefore the claim was not covered. This finding was commented upon in McKenzie & Johnson, Insurance Law and Practice, § 183 at p. 370, in 15 La. Civil Law Treatise (2d Ed.1996). The treatise concludes that defective workmanship or the incorporation of defective materials is generally recognized to be an accident and is therefore an occurrence as that term is defined in CGL insurance policies. In discussing our holding in Lewis v. Easley, supra, and other similar jurisprudence, the treatise authors note that the suggestion that improper construction was not an occurrence was dicta because the courts also concluded properly that coverage was excluded by the work or product exclusions. The treatise also noted that the mere existence of a construction defect does not trigger coverage under an occurrence based policy. Coverage is triggered if the defect causes property damage within the policy term. We also observe that in Joe Banks Drywall & Acoustics, Inc. v. Transcontinental Insurance Company, 32,743 (La.App.2d Cir.3/1/00), 753 So.2d 980, a stain on vinyl flooring was found to be an occurrence under the terms of the insurance policy, *92 however, coverage was precluded under a work-product exclusion.[1] Accordingly, we find that the property damage complained of was an occurrence under the Maryland policy definition. This finding is not in conflict with our holding in Lewis v. Easley, supra.

PROPERTY DAMAGE DURING THE POLICY PERIOD
Maryland's policy provides coverage for property damage only if it occurs during the policy period. The Maryland policy was in effect during the time the house was built, but was not in effect when the damage allegedly caused by an unstable foundation was discovered. Maryland contended in its motion for summary judgment that the property damage complained of by the Oxners did not occur while Maryland's policy was in effect. According to Maryland, the trial court ignored their argument on this issue. Maryland asserts that we must determine whether the policy is triggered when the negligence occurs, such as in the construction phase, or when the resulting damage manifests itself and is discovered. For the following reasons, we find that the policy is triggered when the damage manifests itself, rather than when the negligent act which causes it occurs.
The question of "occurrences" arising during policy periods has been examined in McKenzie & Johnson, Insurance Law and Practice, § 183, at p. 370, in 15 La. Civil Law Treatise (2d Ed.1996):
With construction defects, the real issue usually is not whether there has been an "occurrence," but whether there has been property damage during the policy period and, if so, whether the "work" exclusion is applicable. If the roof leaks or the wall collapses, the resulting property damage triggers coverage under an "occurrence" basis policy, even if the sole cause is improper construction and the only damage is to the work performed by the contractor. Whether coverage for such an "occurrence" is excluded by the work, product or other exclusion is a separate, very important inquiry.
This is the position supported by the jurisprudence. In Oceanonics Inc. v. Petroleum Distributing Company, 292 So.2d 190 (La.1974), the Louisiana Supreme Court held that there was no insurance coverage when the policy provided coverage only for property damage occurring during the policy period, and the negligent act was committed during the policy period but the damage occurred after the expiration. The court also found that such an exclusion was not contrary to public policy.
In Nash v. Western Casualty & Surety Company, 406 So.2d 176 (La.1981), a contractor installed an unvented gas space heater which caused a fire. Under the insurance policy, property damage was defined as damage which occurs during the policy period. Because the policy did not apply to completed operations, the Louisiana Supreme Court found that there was no insurance coverage for the damage caused by the fire.
In St. Paul Fire & Marine Insurance Company v. Valentine, supra, a fire was caused by faulty electrical wiring. The wiring was installed while an insurance policy was in effect, but the fire occurred after the policy expired. The court found that there was no coverage. Although the alleged negligent act took place during the *93 policy period, no property damage occurred until after the policy expired.
In Mut v. Newark Insurance Company, 289 So.2d 237 (La.App. 1st Cir.1973), writs denied, 290 So.2d 912 (La.1974), a wall of a building collapsed due to improper construction and damaged the building of an adjoining property owner. The court found that there was no insurance coverage because the damage did not occur within the policy period. See also Prudential Property Casualty Insurance Company v. Stuckey, 486 So.2d 352 (La.App. 3d Cir.1986); Lafayette Insurance Company v. C.E. Albert Construction Company, Inc., 95-0048 (La.App. 4th Cir.9/15/95), 661 So.2d 1093, writ denied, 95-2465 (La.1/5/96), 666 So.2d 296; Jackson v. Welco Manufacturing of Texas, 612 So.2d 743 (La.App. 4th Cir.1992); Alberti v. WELCO Manufacturing of Texas, 560 So.2d 964 (La.App. 4th Cir.1990), writ denied, 565 So.2d 945 (La.1990).
The issue was further examined in Korossy v. Sunrise Homes, Inc., supra. That case dealt with numerous claims for damage caused by defective foundations in a new subdivision. In considering when the damage arose, the court considered the exposure theory and the manifestation theory. Under the exposure theory, damage would be considered to have occurred when the act which resulted in the damage took place, not when the damage was discovered. Thus, where damage develops over a period of time from continuous or repeated exposure to injurious conditions, courts have determined that the occurrence took place either at the inception of the exposure period or continuously during the entire course of exposure, as in asbestos cases. Even where the damage or injury was not manifested until after an insurer's policy period, if the insurer's policy period fell either at the inception or during the course of exposure, the insurer would be liable. Korossy v. Sunrise Homes, Inc., supra.
Under the manifestation theory, property damage would be considered to have occurred when it became manifest, regardless of when the act from which it resulted occurred. The court in Korossy found that the manifestation theory applied, reasoning that settling caused the damage to the house foundations due to continuous or repeated exposure to injurious conditions over a course of time, but the effects of excessive settling did not become "damage" until it was discovered by the homeowners. The court's reasoning was also followed in James Pest Control, Inc. v. Scottsdale Insurance Company, 99-1316 (La.App. 5th Cir.6/27/00), 765 So.2d 485, writ denied, 2000-2285 (La.10/27/00), 772 So.2d 657, which held that the manifestation of termite damage triggered insurance coverage.
We find that the manifestation theory is properly applied in the case sub judice. As observed in Lafayette Insurance Company v. C.E. Albert Construction Company, Inc., supra, under the exposure theory, an insurer would arguably remain a guarantor of its insured's actions forever. We reject such an inequitable result.
In the present case, Maryland's insurance policy was applicable during the construction of the house. The Ohio policy was in effect thereafter. The record shows that evidence of property damage was observed at the time of the sale of the house, long after the expiration of the Maryland policy. We are unable to determine from the record exactly when, prior to the sale, that property damage occurred and became apparent. Therefore, upon the facts presented, we are unable to make a determination of when the damage occurred. However, for the reasons which follow, we find that the damage is not *94 covered under either the Maryland or the Ohio insurance policies.

"PREMISES ALIENATED" CLAUSE
Maryland and Ohio argue that the trial court erred in finding that the products-completed operations hazard provisions of the policies conflict with the "premises alienated" exclusions. They contend that the trial court incorrectly concluded that these provisions were ambiguous, precluding the grant of summary judgment in favor of the insurance companies.
The products-completed operations hazard provision is impacted in the Maryland and Ohio policies by the "premises alienated" exclusions. The insurance policies supplied by both Maryland and Ohio are occurrence policies which include coverage for products-completed operations hazard. This is among the standard hazards covered by a comprehensive general liability policy. See McKenzie & Johnson, Insurance Law and Practice, § 186, at p. 379, in 15 La. Civil Law Treatise (2d Ed.1996). Coverage is provided for the risk of liability arising out of products after they have left the hands of the insured. The completed operations hazard refers to the insured's exposure to liability arising out of completed work performed away from his premises. The products liability and completed operations hazards are usually covered under the standard provisions of a general liability policy, but an insured may choose to exclude such coverage. McKenzie & Johnson, Insurance Law and Practice, § 186, at p. 380, in 15 La. Civil Law Treatise (2d Ed.1996).
Both the Maryland and Ohio policies, in Section V-14, define "products-completed operations hazard" as follows:
"Products-completed operations hazard" includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:
(1) Products that are still in your physical possession; or
(2) Work that has not yet been completed or abandoned.
The standard provisions of a comprehensive general liability policy exclude coverage for property damage to "premises alienated" by the named insured, arising out of such premises or any part thereof. The exclusion relates only to property damage to the alienated premises. It does not exclude coverage for bodily injury or damage to other property which may be caused by some defect in the alienated premises. McKenzie & Johnson, Insurance Law and Practice, § 196, at p. 409, 15 La. Civil Law Treatise (2d Ed.1996). In the policies considered in this appeal, however, there is coverage of premises alienated by the named insured unless the premises were occupied, rented or held for rental by the named insured.
The Maryland policy contains a "premises alienated" clause which provides as follows:
2. Exclusions
This insurance does not apply to:
j. "Property damage" to
2. Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises. This exclusion does not apply if the premises are "your work" and were not occupied, rented or held for rental by you for more than a period of 12 consecutive months after completion of the premises.[2] [Emphasis supplied.]
*95 The Ohio policy also contains a "premises alienated" clause which provides as follows:
This insurance does not apply to:
j. Damage to Property
"Property damage" to:
(1) Property you own, rent, or occupy;
(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;
(3) Property loaned to you;
(4) Personal property in the care, custody or control of the insured;
(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or
(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.
Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you. [Emphasis supplied.]
The argument that the alienation of premises exclusion conflicts with the products-completed operations hazard coverage and is therefore ambiguous was addressed and rejected in Korossy v. Sunrise Homes, Inc., supra. That case considered similar provisions to those at issue here. The court observed that no Louisiana cases have interpreted an alienated premises exclusion. However, under the established principles for interpretation of insurance policies, the court found no ambiguity in the wording. The court found that the alienated premises exclusion applied to preclude insurance coverage.
Accordingly, in the present case, we do not find the "premises alienated" exclusions to be ambiguous or in conflict with the products-completed operations hazard provisions of the insurance policies. The products-completed operations hazard coverage does not apply in the case of the Ohio policy if the property which is sold, given away or abandoned, was ever occupied, rented or held for rental by the insured. Under the terms of the Maryland policy, the products-completed operations hazard provision does not apply to premises the insured sells, gives away or abandons, if the "property damage" arises out of any part of those premises. This exclusion does not apply if the premises are "your work"[3] and were not occupied, rented or held for rental by the insured for more than a period of 12 consecutive months after completion of the premises. It is not disputed in this case that the Montgomerys lived in the house for more than 12 consecutive months after they built the house and prior to selling it to the plaintiffs. Therefore, the requirements of the "premises alienated" exclusions in both the Maryland and Ohio policies are satisfied and there is no insurance *96 coverage by either policy for the damage claimed herein. We also reject the argument that application of the "premises alienated" provision renders ineffectual the products-completed operations coverage under the general terms of the policy. Coverage is not completely abrogated; it is merely excluded in some limited and well-defined circumstances. We find that as to both insurance companies, the clear wording of the "premises alienated" exclusions applies to exclude insurance coverage for the damage complained of by the plaintiffs.

CONCLUSION
For the reasons stated above, we find that the applicants, Maryland Casualty Company and Ohio Casualty Insurance Company, have demonstrated that coverage for the damage claimed by the plaintiffs, Jim Henry Oxner and Deborah Cole Oxner, is excluded under the clear and unambiguous provisions of the insurance policies. We reverse the trial court judgment to the contrary and enter summary judgment in favor of Maryland and Ohio, dismissing the claims of the plaintiffs against the insurance companies. Costs are assessed to the plaintiffs.
REVERSED AND RENDERED.
NOTES
[1] This court noted that a general liability policy containing a work-product exclusion has uniformly been held in this circuit not to insure any obligations of the policyholder to repair or replace his own defective work or defective product.
[2] The version of the exclusion contained in j(2) attached to Maryland's motion for summary judgment was slightly different from the version supplied to the plaintiffs in discovery, which had an attached endorsement that slightly altered the provision. The plaintiffs argue that this raises an issue of material fact as to which is the correct version. Maryland concedes that the version furnished to the Oxners correctly reflects the exclusion at issue here. Further, the differences between the provisions has no effect on the decision of the issue at hand.
[3] Under the terms of the policy, "your work" is defined as:

a. Work or operations performed by you or on your behalf; and
b. Materials, parts or equipment furnished in connection with such work or operations. "Your work" includes:
a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work" and
b. The providing of or failure to provide warnings or instructions.