799 So.2d 705 (2001)
Glynn DAVIS, Plaintiff-Appellant,
v.
AMERICAN HERITAGE LIFE INSURANCE COMPANY, Defendant-Appellee.
No. 35,153-CA.
Court of Appeal of Louisiana, Second Circuit.
October 31, 2001.
*706 O'Neal Law Offices by Hodge O'Neal, III, Monroe, Counsel for Appellant.
Crawford & Anzelmo by Donald Anzelmo, Monroe, Counsel for Appellee.
Before BROWN, WILLIAMS and KOSTELKA, JJ.
BROWN, J.
Plaintiff, Glynn Davis, appeals from a judgment dismissing his action for disability *707 benefits under a contract of insurance with defendant, American Heritage Life Insurance Company ("American Heritage"). For the reasons that follow, we affirm.

Facts and Procedural Background
Plaintiff, Glynn Davis, whose birthdate is 03-19-49, was a laborer with the Louisiana Department of Transportation and Development ("DOTD") from 1978 until June 1, 1999. On that date, while at work, Davis began suffering severe chest pains. Davis was subsequently admitted to the hospital where doctors discovered that he had suffered an acute myocardial infarction or heart attack. As a result of his heart attack, Davis's doctors informed him that he could no longer work as a laborer.
At the time of his heart attack, Davis had in effect disability insurance with American Heritage. For disability resulting from an accident, benefits are payable under the terms of the policy in the amount of $600 per month. The front page of the policy contains this sentence in bold all capital letters: "THIS IS AN ACCIDENT ONLY POLICY WHICH DOES NOT PAY BENEFITS FOR A LOSS FROM SICKNESS." The policy further provides:
If, while this policy is in force, a covered person sustains an injury, which results, within 90 days ... from the date of an accident, in any of the losses stated in the BENEFITS provision, and is diagnosed by a physician, we pay the following benefits for such loss. Any loss not stated in the BENEFITS provision is not covered under this policy.
* * *
PART SIXDisability: If the insured is totally disabled as a result of an injury, we pay the monthly benefit stated on page 3. To be eligible for benefits, the insured must be disabled for 3 full days. After the 3rd day, benefits are payable for the first 3 days and every additional day for up to 6 months. For any period of disability less than one full month, 1/30 of the monthly amount is paid for each day of total disability.
The policy defines "injury" as:
[A]ccidental bodily injury to a covered person as the result of an accident while coverage under this policy is in force which results:
(a) in a loss of life or by dismemberment within 180 days after the date the injury is sustained; or
(b) in expenses incurred for medical treatment within 90 days after the injury is sustained.
All injuries sustained in any one accident and all complications and recurrences of complications is (sic) considered to be a single "injury."
The policy defines "accident" as:
[T]he unforeseen occurrence of an event which results in injury to a covered person.
Davis's application for insurance, dated November 5, 1997, is included as an exhibit. On the application, the following two questions appear:
(15) All Coverages (Except Accident): Is any person to be insured now being treated for or has any person ever been treated for: (a) cancer or any malignancy...; (b) a stroke; a heart attack; a heart condition; heart trouble; or any abnormality of the heart (including artery disease); diabetes; emphysema; asthma; or any liver disorder; or (c) now has high blood pressure not well controlled by medication? (Emphasis added).
(16) All Coverages (Except Heart/ Stroke, DI and Accident): Has any person to be insured ever had or been treated for or diagnosed by a member of *708 the medical profession as having: Rocky Mountain Spotted or scarlet fever; muscular dystrophy; polio or osteomyelitis; multiple sclerosis; encephalitis; rabies; tetanus; tuberculosis; diphtheria; Hansen's Disease; bubonic plague; sickle cell anemia; smallpox; Addison's Disease; tularemia; typhoid or undulant fever; or epidemic cerebrospinal meningitis? (Emphasis added).
Beside each of these questions, Davis was told by the agent to write "N/A" for not applicable.
Davis's medical records from September 1997 reflect that he suffered from both diabetes and hypertension, although the doctor noted that both conditions were "controlled." The records also indicate that Davis was obese.
After his heart attack, Davis filed a claim with American Heritage seeking disability payments of $600 per month due to his inability to return to work with the DOTD. American Heritage refused to pay the claim and on February 25, 2000, Davis filed the instant action against American Heritage. Both parties filed motions for summary judgment.
After considering the policy terms and Davis's medical records, the trial court found that Davis's medical condition "most certainly caused or contributed" to his heart attack. Furthermore, the trial court observed that Davis had been working as a laborer since 1987 and that his normal work activity would not be considered an "unforeseen occurrence." The trial court then held that Davis's heart attack was not an "unforeseen occurrence" within the policy's definition of "accident." On February 20, 2001, the trial court signed a judgment granting American Heritage's motion for summary judgment and dismissing Davis's action. It is from this judgment that Davis has appealed.

Discussion
Summary judgment procedure is designed to secure the just, speedy and inexpensive determination of every action except those disallowed by law. La.C.C.P. art. 966(A)(2); Knowles v. McCright's Pharmacy, Inc., 34,559 (La.App.2d Cir.04/04/01), 785 So.2d 101; Robinson v. Brookshires No. 26, 33,713 (La.App.2d Cir.08/25/00), 769 So.2d 639; Lee v. Wall, 31,468 (La.App.2d Cir.01/20/99), 726 So.2d 1044. The judgment sought shall be rendered only if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La.C.C.P. art. 966(B); American Deposit Insurance Co. v. Myles, 00-2457 (La.04/25/01), 783 So.2d 1282; Knowles, supra; Robinson, supra.
Appellate review of summary judgment is de novo, utilizing the same criteria that guide the trial court's grant of the judgment. Magnon v. Collins, 98-2822 (La.07/07/99), 739 So.2d 191; Crocker v. Roach, 33,507 (La.App.2d Cir.08/23/00), 766 So.2d 672, writ denied, 00-2684 (La.11/17/00), 774 So.2d 983.
The interpretation of an insurance contract is usually a legal question which can be properly resolved by means of a motion for summary judgment. American Deposit Insurance Co., supra; Crocker, supra. However, summary judgment declaring a lack of coverage under an insurance policy may not be rendered unless there is no reasonable interpretation of the policy, when applied to the undisputed material facts shown by the evidence supporting the motion, under which coverage could be afforded. Reynolds v. Select Properties, Ltd., 93-1480 (La.04/11/94), 634 So.2d 1180; Crocker, supra.
*709 An insurance policy is an agreement between the parties and should be interpreted by using ordinary contract principles. Blackburn v. National Union Fire Insurance Co. of Pittsburgh, 00-2668 (La.04/03/01), 784 So.2d 637; Smith v. Matthews, 611 So.2d 1377 (La.1993); Crocker, supra. The parties' intent, as reflected by the words of the policy, determines the extent of coverage. La.C.C. art. 2046; Blackburn, supra; Fleming Novelty, Inc. v. Alexander, 34,346 (La.App.2d Cir.12/20/00), 775 So.2d 643, writ denied, 01-0239 (La.03/23/01), 787 So.2d 1002. Words and phrases used in a policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning. La.C.C. art.2047; Reynolds, supra. When technical words are unambiguous and the parties' intent is clear, the insurance contract will be enforced as written. Blackburn, supra.
As stated by this court in Fleming Novelty, Inc., supra at 646:
Ambiguity in an insurance contract must be resolved according to the general rules governing contract interpretation and the policy must be construed as a whole; one policy provision is not to be construed separately at the expense of disregarding other provisions. Ambiguity will also be resolved by ascertaining how a reasonable insurance policy purchaser would construe the clause at the time the insurance contract was entered. Breland [v. Schilling, 550 So2d 609 (La. 1989)], supra. Although ambiguities should be construed in favor of the insured and against the insurer, courts lack authority to alter or strain policy terms under the guise of contractual interpretation when provisions are couched in unambiguous language. An insurance policy should not be interpreted in an unreasonable or a strained manner so as to enlarge or restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion. (Citations omitted).
In Doerr v. Mobil Oil Corporation, 00-0947 (La.12/19/00), 774 So.2d 119, 124, corrected on reh'g on other grounds, 00-0947 (La.03/16/01), 782 So.2d 573, the supreme court explained the allocations of the burdens of proof concerning coverage:
When determining whether or not a policy affords coverage for an incident, it is the burden of the insured to prove the incident falls within the policy's terms. On the other hand, the insurer bears the burden of proving the applicability of an exclusionary clause within a policy. Importantly, when making this determination, any ambiguities within the policy must be construed in favor of the insured to effect, not deny, coverage. (Citations omitted).
In the instant case, plaintiff's affidavit in support of his summary judgment motion and in opposition to that of defendant's states that his job with the Louisiana Department of Transportation and Development consisted of "heavy manual labor;" on June 1, 1999, he began experiencing severe pains in his chest; he left work and drove home; and his wife then took him to the emergency room at the LSU-Conway Hospital in Monroe, Louisiana. His affidavit does not describe the occurrence of any specific event as preceding the chest pains. Accepting these facts as true, the issue is whether plaintiff carried his burden of proving that there was coverage under the policy.
In Fruge v. First Continental Life and Accident Insurance Co., 430 So.2d 1072 (La.App. 4th Cir.1983), writ denied, 438 So.2d 573 (La.1983), the court considered whether an insured's heart attack was an "accidental bodily injury" for purposes of a *710 disability insurance policy. Importantly, the policy in Fruge did not define "accident." The court concluded that, under the common meaning of accident or bodily injury, the insured's heart attack was a disease or illness, not "an immediate or traumatic incident inflicted upon the human body causing injury." Fruge, supra at 1075.
Unlike the Fruge case, the disability policy in the instant case contains a broad definition of "accident" as an "unforseen occurrence of an event which results in injury to a covered person." However, we read all parts of the insurance contract together so as to give effect to each part. Fleming Novelty, Inc., supra. On the first page of the American Heritage policy is a specific statement that the company does not pay benefits for a loss from sickness. Given this limitation, an "event" within the definition of "accident" must mean some unforeseen external trigger and not the natural result of a sickness of the insured.
The record in this case supports the factual conclusion that Davis's heart attack was not the result of some external force or event, but instead was the result of natural physiological causes or sickness. There is absolutely no evidence that his heart attack was prompted by some particular exertion or event as contemplated by the policy.

Conclusion
For the reasons set forth above, the judgment of the trial court dismissing plaintiff's, Glynn Davis's, action against defendant, American Heritage Life Insurance Company, is affirmed. Costs are assessed to plaintiff-appellant, Glynn Davis.
AFFIRMED.