820 So.2d 1138 (2002)
Warren L. GOTTSEGEN
v.
HART PROPERTY MANAGEMENT INC., George Lillich, Jr., Allstate Insurance Company and Scottsdale Insurance Company.
No. 02-CA-129.
Court of Appeal of Louisiana, Fifth Circuit.
May 29, 2002.
*1139 David I. Bordelon, Ungarino & Eckert, Metairie, LA, for Appellant/Defendant Scottsdale Insurance Company.
J. David Forsyth, Maria N. Rabieh, Sessions, Fishman & Nathan, L.L.P., New Orleans, LA, for Appellees/Defendants George Lillich, Jr. and Hart Property Management, Inc.
Panel composed of Judges JAMES L. CANNELLA, THOMAS F. DALEY and MARION F. EDWARDS.
CANNELLA, Judge.
Third-party Defendant, Scottsdale Insurance Company (Scottsdale), appeals the denial of its motion for summary judgment and the granting of a motion for summary judgment filed by the third-party Plaintiffs, Hart Property Management, Inc. (Hart) and George Lillich, Jr. (Lillich), on the issue of insurance coverage. We affirm.
According to the petition of the Plaintiff, Warren L. Gottsegen (Gottsegen), Hart through Lillich, was hired to manage a four-plex apartment complex in Metairie, Louisiana that was owned by Gottsegen. Hart managed the property from 1974 until 1998. In 1997, because of leaking problems with the flat roof, Lillich proposed to construct a pitched roof on the building. Gottsegen agreed to this renovation and the work began in June of 1997. After Lillich commenced work, Jefferson Parish (the Parish) inspectors stopped the construction because no permits had been obtained. According to the Plaintiff, the shutdown lasted several months and the roof was left unprotected. As a result, during heavy rain storms, water leaked into the interior of the complex, damaging the interior and causing tenants to move. The Plaintiff took over the construction after discovering the problem in March of 1998 and he completed the renovation.
On November 10, 1998, the Plaintiff filed suit against Hart, Lillich, Allstate Insurance Company, the insurer of the property, and Scottsdale, as the errors and omissions' carrier for Hart, seeking to recover more than $43,000 in damages. Scottsdale responded with a Motion for Summary Judgment denying coverage for Hart. The motion was denied and both this Court and the Louisiana Supreme Court denied writs.[1]
*1140 Following the resumption of the proceedings, Hart and Lillich requested Scottsdale to provide a defense, as required under Hart's Commercial General Liability insurance policy. Scottsdale refused. In March of 2000, Hart and Lillich filed a third-party action against Scottsdale, demanding a defense. In January of 2001, Hart and Lillich filed a Motion for Summary Judgment contending that the policy provides coverage for the damages alleged by the Plaintiff, and that under the policy, Scottsdale has a duty to defend. At the least, Hart and Lillich alleged, Scottsdale has a duty to defend because the policy does not unambiguously exclude coverage. Scottsdale responded with a cross motion for summary judgment contending that the policy endorsement and other provisions exclude coverage under these facts.
A hearing was held on both motions in March of 2001. After taking the motions under advisement, the trial judge rendered a judgment on April 12, 2001 granting Hart and Lillich's motion and denying Scottsdale's motion. He further found that the policy provides coverage for Hart in the event of judgment for the Plaintiff, and that Scottsdale owes Hart the duty to defend the lawsuit.
On appeal, Scottsdale asserts that the trial judge erred. Scottsdale refers to one of the endorsements to the policy that states "LIMITATION OF COVERAGE REAL ESTATE OPERATIONS" and to the "Exclusions" provision of the policy, Section 1A2j(5). Hart and Lillich respond that the policy provisions are contradictory and ambiguous, and would lead to absurd results if the policy is interpreted to exclude this coverage. They contend that if these provisions are applicable, the policy is meaningless, because this business is described in the declarations page as a real estate management company and the premiums were paid to cover liability for damages that insured might have to pay in connection with the operation of the business. This is the intent of the policyholder. Furthermore, they argue that the exclusions are ambiguous.
A summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(B); Araujo v. Eitmann, 99-1377 (La. App. 5th Cir.5/17/00) 762 So.2d 223, 224-225. Summary judgment is now favored as a mechanism to "secure the just, speedy, and inexpensive determination" of all actions, except those excluded by La. C.C.P. art. 969. La. C.C.P. art. 966(A)(2); Araujo 762 So.2d at 224. The appellate review of summary judgment is de novo, applying the same standard as the trial court. Araujo 762 So.2d at 225. Accordingly, we undertake a de novo review of this appeal.
The general rules of contract interpretation apply to the contract of insurance. Crabtree v. State Farm Ins. Co., 93-0509 (La.2/28/94), 632 So.2d 736, 741. A contract is interpreted by determining the common intent of the parties. La.C.C. art.2045. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. La.C.C. art.2046. Conversely, when the words of a contract are ambiguous or lead to absurd consequences, a *1141 court attempting to interpret the contract must try to ascertain the common intent of the parties in other ways. Doubtful provisions must be interpreted in light of the nature of the contract, equity, usage and the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties. La. C.C. art.2053.
Insurance policies should be interpreted to effect, not deny, coverage. Yount v. Maisano, 627 So.2d 148, 151 (La. 1993). Any ambiguity in an insurance policy's exclusion should be narrowly construed to afford coverage. Peterson v. Schimek, 98-1712 (La.3/2/99), 729 So.2d 1024, 1029; Yount, 627 So.2d at 151. Furthermore, the insurer bears the burden of proving that a loss falls within a policy exclusion. Blackburn v. Nat'l Union Fire Insurance Co. of Pittsburgh, 00-2668 (La.4/3/01), 784 So.2d 637, 641.
Section 1A of the policy sets out the coverages for bodily injury and property damage liability. Section 1A2 lists various exclusions. Section lA2j(5) excludes damage to property when:
(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; ...[2]
The declaration page of the policy states that the "business" of the policyholder is "Real Estate Management." A supplemental declarations page, the "Commercial General Liability Coverage Part Extension of Supplemental Declarations," lists and apportions the premium for four classes covered:
1. Real Estate Property Managed Products-Completed Operations,
2. Real Estate AgentsProducts-Completed Operations,
3. Janitorial ServicesProducts-Completed Operations and
4. Contractors-Subcontracted Work In Connection With Construction, Reconstruction, Repair or Erection of Buildings.
In addition, for each class listed, the policy provides coverage for two types of hazards, Premises/Operations and Products/Completed Operations. The total premiums for these covered hazards totaled $4,529. These declarations are specifically designed to meet Hart's needs. Its specifications are inserted in a supplemental declaration form. That form is then followed by the printed policy describing the terms and conditions of the policy.
"Products-completed operations hazard" is defined in Section V, 14a(2), and includes:
a. [a]ll ... "property damage" occurring away from property you own or rent and arising out of ... "your work", except ...
(2) Work that has not yet been completed or abandoned....
"Your work" is defined as work or operations performed by the insured or on the insureds' behalf. See: Section V, 19a.[3]
In this case, the work was performed by the insured and the damage occurred after the job was halted by the Parish. Lillich *1142 testified that Hart's workers never returned to finish the roof. Thus, it abandoned the work, and the damage in this case falls under the definition of a products-completed operations hazard. That is specifically listed as a covered hazard in the declarations page.
However, the "Exclusions" section of the policy, Section 1A2j(5) excludes property damage for "That particular part of real property on which you ... are performing operations, if the "property damage" arises out of those operations .... There is no definition of the word "operations" in the policy.
Our conclusion is that, if the damage occurred from "operations" that Hart was conducting, i.e. construction work, then a conflict exists between the declared coverage that was negotiated and paid for and the exclusion that states that same hazard is not covered. That would not have been the intent of the policyholder. Notably, the policy itself was not drawn up particular to Hart, but the declarations part was particularized to Hart's needs. Because of the particularized declarations showing that Hart paid for the hazard that Section 1, A2j(5) appears to exclude, an ambiguity is created and the intent of the parties is questionable. Furthermore, we cannot determine what specific "products-completed operations hazard" would be covered by the policy.
We further find that the word "operations" is ambiguous. It is not defined in the policy. The words "work" and "operations" are not used interchangeably in the policy. "Your work" is defined as work or operations. Thus, we cannot apply this provision to exclude the coverage since the intent of the parties is unclear.
The second exclusion cited by Scottsdale is the "LIMITATION OF COVERAGEREAL ESTATE OPERATIONS" endorsement included on a separate page following the printed policy. The endorsement states that it modifies the Commercial General Liability Coverage Part. The "LIMITATION OF COVERAGEREAL ESTATE OPERATIONS" provides that:
With respect to real estate operations, this insurance applies only to ... "property damage" ... arising out of the ownership, operation, maintenance or use of:
1. Such part of any premises you use for general office purposes;
2. Premises listed with you for sale or rental, if:
a. You do not own, operate, manage or rent the premises;
b. They are not in your care, custody, or control; or
c. You do not act as agent for the collection of rents or in any supervisory capacity [emphasis added]
An endorsement to an insurance policy can modify previous policy provisions. Scottsdale argues that the "LIMITATION OF COVERAGEREAL ESTATE OPERATIONS" modifies any prior coverage that may have existed in the policy for this type of damage. However, we find an ambiguity in the endorsement sections as well.
Attached to and following Section V of the policy are several separate pages of endorsements excluding certain activities, including the one relied upon by Scottsdale. Most are unrelated to real estate activities. The phrase "REAL ESTATE OPERATIONS" is not defined in the policy, nor is the word "operations." Although an interpretation could be made that it encompasses all facets of the real estate business, that conclusion is muddied by the fact that two other real estate activities are the subject of specific endorsements. *1143 One of these excludes various types of damage resulting from the rendering or failure to render professional services. (The description section lists the professional service as a real estate agency.) The other is titled REAL ESTATE PROPERTY MANAGED. Because the policy separates two real estate "operations," we cannot place an all inclusive meaning on the phrase and presume that construction work is included in the endorsement for "REAL ESTATE OPERATIONS." Furthermore, although construction work could be considered to fall within the broad meaning of "operations," it is not generally perceived as a part of a real estate business. Construction operations and real estate operations have inherently different meanings. In general, the business of a real estate company is more closely associated with sales, rental, and property management. Thus, we find that the REAL ESTATE OPERATIONS exclusion is ambiguous.
Scottsdale also contends that the endorsement for "REAL ESTATE PROPERTY MANAGED" excludes this type of property damage. That provision states:
This insurance does not apply to "property damage" to property you operate or mange[manage] or as to which you act as agent for the collection of rents or in any other supervisory capacity. With respect to your liability arising out of your management of property for which you are acting as real estate manager this insurance is excess over any other valid and collectible insurance available to you.
We find that this provision is inapplicable. Although the renovation can be interpreted to be included in the duties of management, coverage for construction activities are a separate class for which Hart paid a separate premium. This declaration would be meaningless if it were totally excluded in the management endorsement. Furthermore, there is nothing else in the policy that would indicate what activities are covered under the "Contractors-Subcontracted WorkIn Connection With Construction, Reconstruction, Repair or Erection of Buildings" class. Furthermore, although Section 1, A2j(6) states that coverage for property damage is excluded for "that part of a property that must be restored, repaired or replaced because `your work' was incorrectly performed," the section further states that this does not apply to property damage included in the "products-completed operations hazard." Since we have determined that Hart is covered under the "products-completed operations hazard," this section of the policy does not exclude coverage either.
In summary, after our review of the policy and the evidence submitted with the motions for summary judgment, we find that the several ambiguities relative to the liability of Scottsdale for these alleged property damages require us to construe the policy as providing coverage to Hart. Consequently, we find that the trial judge did not err in the same finding, and in finding that Scottsdale owes Hart the duty to defend.
Accordingly, we hereby affirm the judgment granting summary judgment in favor of third-party Plaintiffs, Hart and Lillich, denying the motion for summary judgment filed by third-party Defendant, Scottsdale. Costs are to be paid by Scottsdale.
AFFIRMED.
NOTES
[1] Writs denied in Gottsegen v. Hart Property Management, Inc., et al, 99-C-864 (La.App. 5th 7/30/99) and Gottsegen v. Hart Property Management, Inc., et a 1, 99-CC-2716 (La.11/24/99).
[2] In Section V, 15a, "Property damage" is defined as:

a. Physical injury to tangible property,... or
b. Loss of use of tangible property that is not physically injured....
[3] This includes materials, parts or equipment, warranties and the providing of or failure to provide warnings.