862 So.2d 1065 (2003)
Roy H. HARRISON, Jr., et al., Plaintiffs-Appellees,
v.
R.R. MORRISON & SON, INC., et al, Defendants-Appellees.
No. 37,992-CA.
Court of Appeal of Louisiana, Second Circuit.
December 10, 2003.
*1066 Nelson, Zentner, Sartor & Snellings, by: Thomas G. Zentner, Jr., Meagher & Geer, PLLP, by: Laura J. Hanson, for Appellant, Federal Mutual Insurance Company.
Hudson, Potts & Bernstein, LLP, by: Robert M. Baldwin, for Appellee, R.R. Morrison & Son, Inc.
James Rodney Pierre, Jarvis M. Antwine, Bobby R. Manning, Langston Firm, L.L.C., by: Carlton L. Parhms, for Plaintiffs/Appellees.
Guillory & McCall, by: William T. McCall, for Appellee, CIGNA Insurance Company.
Simon, Peragine, Smith & Redfearn, by: James A. Burton, Daniel J. Caruso, Susan M. Caruso, for Appellee, OneBeacon Insurance Group.
Perry Theriot, for State of Louisiana, Department of Environmental Quality.
Daigle, Scofield & Rivera, by: Todd G. Crawford, for Cagle Brothers and C & J Pump Service, Inc.
Hayes, Harkey, Smith & Cascio, by: Thomas M. Hayes, III, for Southern Tank Testers, Inc.
Session, Fishman & Nathan, by: David Salley, J. Michael Monsour, for Steadfast Insurance Company.
Lugenbuhl, Wheaton, Peck, Ranking & Hubbard, by: Ralph S. Hubbard, III, Cé leste Darmstadter Elliott, for Amicus Curiae Complex Insurance Claims Litigation Association.
Before CARAWAY, GASKINS & PEATROSS, JJ.
PEATROSS, J.
This appeal arises from a denial of Defendant Federated Mutual Insurance Company's ("Federated Mutual") motion for summary judgment and grant of Defendant R.R. Morrison & Son, Inc.'s ("R.R.Morrison") motion for summary judgment. Federated Mutual now appeals the judgment of the trial court. For the reasons stated herein, we reverse and render.

FACTS
R.R. Morrison operates convenience stores throughout Mississippi, Louisiana and Tennessee, primarily selling gasoline. It is headquartered and has its principal place of business in Mississippi. R.R. Morrison insured its convenience stores through an insurance policy it purchased from Federated Mutual. On May 5, 1999, a leak was discovered in the underground gas storage tank at the R.R. Morrison store in Monroe, Louisiana.
On May 5, 2000, Roy Harrison, Jr. and a group of other landowners ("Plaintiffs") filed suit against R.R. Morrison, claiming that gasoline from R.R. Morrison's property had been leaking into the groundwater and surrounding soil of their property causing them bodily injury and loss of use and enjoyment of their property. Plaintiffs later joined Federated Mutual as a Defendant in the lawsuit against R.R. Morrison on the basis that Federated Mutual insured R.R. Morrison's convenience store. Subsequently, R.R. Morrison filed a cross-claim against Federated Mutual, claiming that it had a duty to defend or indemnify R.R. Morrison in this action.
On November 15, 2002, Federated Mutual moved for summary judgment, claiming that it was not obligated to defend or indemnify R.R. Morrison in this case because *1067 of an absolute pollution exclusion found in subsection (f)(1)(a) of the insurance policy. The pollution exclusion clause provides that the insurance policy does not apply to:
f. (1) Bodily injury or property damage arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:
(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;
The policy defines pollutants as:
Any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.
Federated Mutual asserted that the gasoline leakage is not covered by the insurance policy. Specifically, Federated Mutual argued that gasoline is a liquid contaminant that is covered under the definition of pollutants. Further, it argued that subsection (f)(1)(a) clearly excludes coverage of R.R. Morrison in this case since it, as the insured, owned and occupied the facility where the release of gasoline allegedly caused the injuries and damages to Plaintiffs.
At the hearing on the motion for summary judgment, Federated Mutual also argued that the trial court should apply Mississippi law and not Louisiana law to this case. Federated Mutual asserted that R.R. Morrison is a Mississippi corporation that has its headquarters in Mississippi and does most of its business in Mississippi and that the insurance policy was confected in Mississippi. Moreover, Federated Mutual insisted that, applying Mississippi law, the pollution exclusion would exclude its coverage in this case. Federated Mutual further contended that, even if the trial court applied Louisiana law, it was clear that the pollution exclusion would apply to exclude their coverage of the action at issue in this case.
R.R. Morrison also filed a motion for summary judgment[1], arguing that the pollution exclusion in the insurance policy is ambiguous as a matter of law and only excludes intentional pollution or environmental damages from coverage. In addition, R.R. Morrison contended that subsection (f)(1)(a) is ambiguous because it does not specifically refer to gas tanks on the site of its convenience store, whereas subsection (f)(1)(f)[2] specifically refers to gas tanks, even though it is referring to off site gas tanks. R.R. Morrison argued that, since Federated Mutual did not specifically write into subsection (f)(1)(a) that gas *1068 tanks at its convenience store were excluded, then this subsection is ambiguous; and, therefore, R.R. Morrison asserted that the leak from its gas tanks is not excluded by subsection (f)(1)(a). Further, R.R. Morrison argues that it is ambiguous as to whether or not gasoline is covered under the definition of pollutants.
R.R. Morrison also argued that Louisiana law should apply based on what it alleges are the significant Louisiana contacts in the case and Louisiana's strong interest in protecting its own citizens. In support of its argument, R.R. Morrison cited the facts that all Plaintiffs are Louisiana domiciliaries and citizens living in Louisiana at the time of the incident; the incident occurred on property situated in Louisiana and all of these parties were allegedly injured in Louisiana; Louisiana law applies to the merits of the case between Plaintiffs and R.R. Morrison; and Federated Mutual was sued directly in this case and made a party to this case by Plaintiffs under the Louisiana direct action statute allowing them to bring direct actions against R.R. Morrison's insurers. R.R. Morrison argues that the trial court correctly found that Louisiana has the most significant interest to be protected such that Louisiana law should apply.
After the summary judgment hearing, the trial judge found that Louisiana law applied to this case. The trial judge concluded that the insurance policy was ambiguous and that the pollution exclusion did not preclude coverage of the claims made by Plaintiffs against R.R. Morrison. Granting both R.R. Morrison's and Plaintiffs' motion for summary judgment and ordering Federated Mutual to defend and indemnify R.R. Morrison, the trial judge held that the claims made by Plaintiffs against R.R. Morrison are covered under the general liability and commercial umbrella policies issued by Federated Mutual and are not excluded from coverage. [Further, the trial judge ordered Federated Mutual to pay all sums that R.R. Morrison becomes legally obligated to pay as damages in this litigation subject to the limits of insurance and self-insured retention; to defend R.R. Morrison in and against the claims asserted by Plaintiffs and non-insurer defendants in this litigation; and to pay and reimburse to R.R. Morrison all attorney fees, costs and expenses in defense of the Plaintiffs' and all non-insurer defendants' claims as determined by the trial court by subsequent rule to show cause. Federated Mutual's motion for summary judgment was denied. Federated Mutual now appeals, raising the following assignments of error (verbatim):
1. It was error for the trial judge to apply Louisiana law rather than Mississippi law to this controversy;
2. Having made the decision to apply Louisiana law, it was error for the trial court judge not to apply the factors defining the scope of the absolute pollution exclusion as set forth by the Louisiana Supreme Court in Doerr v. Mobil Oil Corp., 00-0947 (La.12/19/00), 774 So.2d 119;
3. It was error for the trial court judge to rule that Federated's absolute pollution exclusion is ambiguous;
4. It was error for the trial court judge to rule that Federated has a duty to defend Morrison in the Harrison Action; and,
5. It was error for the trial court judge to rule that Federated has a duty to indemnify Morrison for any damages awarded in the Harrison Action when the nature and existence of those damages have not yet been determined and cannot yet be determined.

*1069 DISCUSSION
Summary judgment procedure is designed to secure the just, speedy and inexpensive determination of every action and the procedure is favored and shall be construed to accomplish these ends. La. C.C.P. art. 966(A)(2). Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B). Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. NAB Natural Resources, L.L.C. v. Willamette Industries, Inc., 28,555 (La.App.2d Cir.8/21/96), 679 So.2d 477. Interpretation of an insurance contract is usually a legal question that can be properly resolved in the framework of a motion for summary judgment. Robinson v. Heard, 01-1697 (La.2/26/02), 809 So.2d 943.

Choice-of-Law
First, La. C.C. art. 14 provides:
Unless otherwise expressly provided by the law of this state, cases having contacts with other states are governed by the law selected in accordance with the provisions of Book IV of this Code.
Since we do not find any specific statutory choice-of-law rules applicable in this case, we must examine the choice-of-law rules set forth in the Code. Under La. C.C. art. 3515, the general Louisiana conflicts of law provides:
Except as otherwise provided in this Book, an issue in a case having contacts with other states is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.
That state is determined by evaluating the strength and pertinence of the relevant policies of all involved states in the light of: (1) the relationship of each state to the parties and the dispute; and (2) the policies and needs of the interstate and international systems, including the policies of upholding the justified expectations of parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state.
In specific concern to the Louisiana conflicts of law regarding conventional obligations, such as insurance contracts, La. C.C. art. 3537 provides:
Except as otherwise provided in this Book, an issue in a case having contacts with other states is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.
That state is determined by evaluating the strength and pertinence of the relevant policies of the involved states in the light of: (1) the pertinent contacts of each state to the parties and the transaction, including the place of negotiation, formation, and performance of the contract, the location of the object of the contract, and the place of domicile, habitual residence, or business of the parties; (2) the nature, type, and purpose of the contract; and (3) the policies referred to in Article 3515, as well as the policies of facilitating the orderly planning of transactions, of promoting multistate commercial intercourse, and of protecting one party from undue imposition by the other.
In determining whether Mississippi or Louisiana policies would be most seriously impaired if its law were not applied, we will look to the strength and pertinence of these factors set forth in the codal articles.
*1070 Federated Mutual argues that our court should apply Mississippi law and not Louisiana law in this case. We agree with Federated Mutual's argument and find that the law of the State of Mississippi would be most seriously impaired if its law was not applied in this case. The relationship of the State of Mississippi to each party is stronger than the relationship of the State of Louisiana to each party. The purpose of the insurance policy was to insure the assets and activities of a Mississippi corporation. R.R. Morrison is a Mississippi corporation that has its headquarters in Mississippi, its primary place of business is in Mississippi and an important fact to our court is that the insurance policy was negotiated and executed in Mississippi.
Further, the policies and needs of the interstate system, including the policies of upholding the justified expectations of the parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state, weigh in favor of applying the law of the State of Mississippi. The insurance policy insures R.R. Morrison's operations in a number of states, but both parties should have expected Mississippi law to apply, considering their strong contacts to that state. If we were to subject Federated Mutual to the laws of Louisiana, then adverse consequences could occur. The application of Louisiana law to the policy could result in the negation of a contract that Federated Mutual confected under the laws of another state.
In addition, the pertinent contacts of each state to the parties and the transaction, including the place of negotiation, formation, and performance of the contract, the location of the object of the contract, and the place of business of the parties, all favor applying the law of the State of Mississippi. As previously stated, the insurance policy was negotiated and formed in Mississippi. R.R. Morrison's primary place of business and headquarters is in the State of Mississippi. The performance of the contract included whatever states in which R.R. Morrison operated, but the State of Louisiana has no connection to the insurance policy other than the fact that it is one location among many that is considered the object of the contract.
Also, the nature, type and purpose of the insurance policy are in favor of applying the law of the State of Mississippi. Louisiana courts have often interpreted insurance policies according to the law of the state where the policy was issued. See Dreisel v. Metropolitan Property and Cas. Ins. Co., 01-2705 (La.App. 1st Cir. 12/20/02), 836 So.2d 347, writ denied, 03-0199 (La.3/28/03), 840 So.2d 575; Montgomery v. Farmers Texas County Insurance Co., 34,628 (La.App.2d Cir.5/9/01), 786 So.2d 306; Zuviceh v. Nationwide Ins. Co., 00-0773 (La.App. 1st Cir.5/11/01), 786 So.2d 340, writ denied, 01-2141 (La.11/9/01), 801 So.2d 373; Anderson v. Oliver, 97-1102 (La.App. 3d Cir.1/7/98), 705 So.2d 301, writ denied, 98-0755 (La.5/8/98), 718 So.2d 434; Shell Oil Company v. Hollywood Marine, Inc., 97-106 (La.App. 5th Cir.10/15/97), 701 So.2d 1038. Mississippi has a legitimate interest in regulating insurance policies executed in Mississippi, especially when an insurance policy is issued to a Mississippi business insuring all its activities. The purpose of the insurance policy in this case was to insure all the activities of R.R. Morrison, a Mississippi business. The integrity of an insurance policy is a substantial and real interest. Zuviceh, supra. The fact that Congress has allowed fifty states to have their own uniform system of regulations governing insurance strongly suggests that this is a legitimate public purpose. Id.
*1071 Moreover, the policy of facilitating the protection of one party from undue imposition by the other weighs in favor of applying the law of the State of Mississippi in the instant case. It would be an undue imposition on Federated Mutual by R.R. Morrison if the law of the State of Louisiana was applied. Federated Mutual negotiated and executed the insurance policies in the State of Mississippi, fully expecting that state's law to apply to the insurance policy, no matter where R.R. Morrison operated its business. We will not impose on Federated Mutual a finding that its insurance policy will be subject to interpretation under the law of the State of Louisiana, which is only one of among many states where R.R. Morrison operates and whose connections to the insurance policy are minimal in comparison to the State of Mississippi's connections to the policy.
Finally, we are not persuaded by R.R. Morrison's use of In re Combustion, Inc., 960 F.Supp. 1056 (W.D.La.1997), in support of its argument that Louisiana law should apply in this case. That case involved the issue of what law must apply in a direct action suit by a class of Louisiana plaintiffs, allegedly injured in Louisiana by the acts of Louisiana domiciliaries or long-time residents. R.R. Morrison is incorporated and has its principal place of business in Mississippi. It is neither a Louisiana domiciliary nor a long-time resident.[3] Moreover, the court in In re Combustion found that Louisiana was the only state having a genuine interest in the disputes over the insurance policies and we make no such finding here. We hold that the law of the State of Mississippi would be most seriously impaired if it were not applied; and, therefore, Mississippi law will be applied to this case. Since we find that Mississippi law will apply, we pretermit discussion of Federated Mutual's second assignment of error.

Application of Mississippi Law
Federated Mutual argues that, under Mississippi law, it had no duty to defend R.R. Morrison. It asserts that the pollution exclusion clause is not ambiguous and that gasoline is clearly a pollutant as same as defined in the policy. We agree.
Under Mississippi law, the interpretation of insurance policy language is a question of law. Johnson v. Preferred Risk-Auto. Ins. Co., 659 So.2d 866 (Miss.1995). The relationship between an insurance company and its insured is contractual in nature, with the rights and duties set out by the provisions of the insurance policy. State Farm Mutual Auto. Ins. Co. v. Universal Underwriters Ins. Co., 797 So.2d 981 (Miss.2001). Like all other contracts, insurance policies which are clear and unambiguous are to be enforced according to their terms as written. Hare v. State, 733 So.2d 277 (Miss.1999). The plain terms of the insurance contract should be binding and controlling. Id. Terms used in insurance policies are given their ordinary and popular definition. Blackledge v. Omega Ins. Co., 740 So.2d 295 (Miss.1999). The bounds of the English language will not be strained by imparting meaning to common words beyond ordinary use. Allstate Ins. Co. v. Moulton, 464 So.2d 507 (Miss.1985). More recently, the Mississippi Supreme Court has held that:
When insurance policy language is clear and unambiguous, this Court will not *1072 adopt a strained interpretation in order to create nonexistent coverage that the insurer otherwise has not assumed. Where the terms of an insurance policy are clear, plain and explicit, the Court should not give a forced construction of the policy. Titan Indemnity Co. v. Estes, 825 So.2d 651 (Miss.2002). In the case sub judice, we find that, applying Mississippi law, subsection (f)(1)(a) of the insurance policy excludes coverage of the alleged gas leakage in this case. The pollution exclusion clause as set forth in subsection (f)(1)(a) dictates that insurance coverage did not apply to bodily injury or property damage arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to R.R. Morrison. Pollutants are defined in the insurance policy as any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. We note that three federal cases, applying Mississippi law, have found that this same policy language is not ambiguous and clearly excluded coverage in the case of diesel fuel and paint and glue fumes as pollutants. See Breese v. Hadson Petroleum (USA), Inc., 955 F.Supp. 648 (M.D.La.1996); American States Ins. Co. v. Nethery, 79 F.3d 473 (5th Cir.1996); American States Ins. Co. v. F.H.S., Inc., 843 F.Supp. 187 (S.D.Miss.1994).
In the instant case, it has been alleged by Plaintiffs that gasoline from R.R. Morrison's property escaped from the underground storage tank, causing them property damage and bodily injury. We find that the pollution exclusion clause in subsection (f)(1)(a) excludes insurance coverage of any pollutant that escapes from R.R. Morrison's property and causes injury to another. Pollutants are defined in the insurance policy as any liquid contaminant. We further find that gasoline is a liquid contaminant within the plain meaning of pollutant in the insurance policy.[4] Since we find that the language in the insurance policy is not ambiguous and is not open to more than one interpretation, the plain meaning of the policy should control. Federated Mutual's insurance policy excludes coverage of the claims against R.R. Morrison; and, thus, Federated Mutual's motion for summary judgment must be granted. We reverse the trial court's judgment denying summary judgment to Federated Mutual and its judgment granting summary judgment to R.R. Morrison. In light of our conclusion, we pretermit discussion of Federated Mutual's fourth and fifth assignments of error.

CONCLUSION
For the foregoing reasons, the judgment of the trial court granting R.R. Morrison & Son, Inc.'s motion for summary judgment and denying Federated Mutual Insurance Company's motion for summary judgment is reversed. Federated Mutual's motion for summary judgment is granted. Costs of this appeal are assessed to Defendant, R.R. Morrison & Son, Inc.
REVERSED AND RENDERED.
CARAWAY, J., concurs with written reasons.
*1073 CARAWAY, J., concurring.
I respectfully concur in the majority opinion. While subsection (f)(1)(a) can exclude coverage in this case, I would find that the more specific provision, subsection (f)(1)(f), quoted in footnote 2 of the majority's opinion, applies and expressly governs this case. Therefore, the issues of Doerr v. Mobil Oil Corp., 00-0947 (La.12/19/00), 774 So.2d 119 concerning the application of a general pollution exclusion provision, which are apparently treated differently under Mississippi law, are avoided.[1]
Under both states' laws, contractual interpretation of an insurance policy involves essentially the reading of the policy language. Subsection (f)(1)(f)'s language unambiguously applies to the leak in this case. Under that subsection, the phrase "which are ... owned, leased, installed, removed, tested, repaired or filled by ... insured, wherever located" modifies "tanks" or "piping." The exclusion clearly applies to those tanks, and if those tanks cannot be on premises owned, leased or serviced by Morrison because subparagraphs (a)(b) and (d) also speak to those premises, then subsection "f" is virtually meaningless under the interpretation asserted by R.R. Morrison. Its argument that subsection "f" only covers jobber site tanks fails to see that subsections (b) and (d) can be construed to apply to those same jobber sites operated by others and serviced by Morrison. Yes, there is some overlap in subsection (f)(1)(a)-(f), yet this does not mean that there is an ambiguity. Since subsection (f)(1)(f) can apply, this is clearly not a Doerr situation because we are dealing with a very specific exclusion for gasoline tank leakage.
NOTES
[1] Plaintiffs filed a separate motion for summary judgment against Federated Mutual, adopting R.R. Morrison's grounds and reasons for summary judgment.
[2] The pollution exclusion clause (f)(1)(f) provides that insurance coverage is excluded for:

f. (1) Bodily injury or property damage arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:
(f) At or from any tank, piping, pumps or dispensers at premises, sites or locations in addition to those described in subparagraphs (a), (b), (d) or (e), which are or were at any time owned, leased, installed, removed, tested, repaired or filled by or on behalf of any insured, wherever located (except at residences primarily used for dwelling purposes) which contain, transport or dispense or are designed to contain, transport or dispense:
(i) motor fuels;
Motor fuels are defined in the policy as:
Petroleum or a petroleum-based substance that is typically used in the operation of a motor or engine, including but not limited to gasoline, aviation fuel, number one or number two diesel fuel, or any grade of gasohol.
[3] La. C.C. art. 3518 provides:

For the purposes of this Book, the domicile of a person is determined in accordance with the law of this state. A juridical person may be treated as a domiciliary of either the state of its formation or the state of its principal place of business, whichever is most pertinent to the particular issue.
A corporation is defined as a juridical person. See La. C.C. art. 24.
[4] "Gasoline" is defined as "a volatile, inflammable, liquid mixture produced by the distillation of petroleum, used as a fuel, solvent, etc." NEW WEBSTER'S DICTIONARY 165 (1992). (Emphasis added.) "Contaminant" is defined as "something that contaminates." "Contaminate" is defined as "to soil, stain, corrupt, or infect by contact or association; to render unfit for use by the introduction of unwholesome or undesirable elements." WEBSTER'S THIRD INTERNATIONAL DICTIONARY 491 (1993).
[1] Even if a Doerr analysis for subsection (f)(1)(a) was necessary, that subsection still applies to exclude coverage. A sophisticated gasoline distributor and convenience store owner, like R.R. Morrison, understood by 1995 that its greatest threat for being a polluter was from underground storage tanks. By the time these tanks were installed, the EPA and DEQ had their regulatory thumbs firmly pressed on all owners of USTs. Next, the policy expressly recognizes motor fuel spills as pollutants whether subsection (f)(1)(f) applies or not. R.R. Morrison did not spill Drano on the floor of its convenience store, and it cannot be compared to the Parish of St. Bernard in Doerr. R.R. Morrison understood itself to be a potential polluter because of the very risk which materialized in this case.